**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ser Yang and Xeng Yang,

Plaintiffs,

v.

Western-Southern Life Assurance Company,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 11-2492 ADM/JJK

---

Timothy T. Sempf, Esq., Novitzke, Gust, Sempf, Whitley & Bergmanis, Amery, WI, on behalf of Plaintiffs Ser Yang and Xeng Yang.

Joseph M. Windler, Esq., and Justice Ericson Lindell, Esq., Winthrop & Weinstine, PA, Minneapolis, MN, on behalf of Defendant Western-Southern Life Assurance Company.

---

## I. INTRODUCTION

On February 28, 2012, the undersigned United States District Judge heard oral argument on Defendant Western-Southern Life Assurance Company's ("WSLAC") Motion for Summary Judgment [Docket No. 23], as well as Plaintiffs Ser Yang and Xeng Yang's Motion to Strike Exhibit [Docket No. 40]. For the reasons set forth below, WSLAC's Motion for Summary Judgment is granted and Plaintiffs' Motion to Strike Exhibit is denied.

## II. BACKGROUND[1]

On October 23, 2009, Soua Yang completed a WSLAC life insurance application ("Application") in the presence of her parents, Adam Yang and Ka Her, at her parents' home. Vang Decl. [Docket No. 29] ¶ 2; Vang Decl. Ex. 1 ("Application"); Adam Yang Decl. [Docket No. 37] ¶ 6. WSLAC sales representative Kaojia Vang posed to Soua Yang the questions from

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

the Application, and Kaojia Vang marked the answers electronically on her laptop. Vang Decl. ¶ 3. Both Kaojia Vang and Soua Yang were native Hmong speakers. Id. Soua Yang immigrated to the United States in 2004, spoke little English and did not read English. Adam Yang Decl. ¶ 3. Kaojia Vang asked each Application question in English and clarified the questions in Hmong as Soua Yang needed. Vang Decl. ¶ 3. Soua Yang orally responded in both English and Hmong, and appeared to Kaojia Vang to understand most of the questions as asked in English. Id.

The Application included Question 4, which asks, "In the past ten years has the person named above received or been advised to receive any medical or surgical treatment or test?" Vang Decl. Ex. 1 at 3. Question 5 asks "In the past ten years has the person named above had or been treated for any abnormality or disease of [heart, brain, lungs, kidneys, or any other part of the body]?" Id. Adam Yang and Ka Her state that Soua Yang spontaneously told Kaojia Vang in Hmong that she had Hepatitis B. Adam Yang Decl. ¶ 7; Ka Her Decl. [Docket No. 39] ¶ 7. Soua Yang's parents also state that Kaojia Vang did not ask Soua Yang about surgery or medical testing. See, e.g., Adam Yang Decl. ¶ 9. Kaojia Vang electronically recorded answers to questions 4 and 5 on the Application as "no." Id.

Upon completion of the Application, Kaojia Vang reviewed Soua Yang's answers with her, and Soua Yang signed the Application. Vang Decl. ¶ 3. On November 10, 2009, a WSLAC representative called Soua Yang and, through the aid of a Hmong interpreter, reviewed the questions from the Application. Wolf Decl. [Docket No. 26] Ex. 1. On December 28, 2009, Kaojia Vang delivered the WSLAC Life Insurance Policy No. W80348184 (the "Policy") to Soua Yang. Id. ¶ 5; Vang Decl. Ex. 2 ("Policy"). The Policy

included a copy of Soua Yang's Application completed on October 23, 2009. See Policy.

Soua Yang had been diagnosed with Hepatitis B in the fall of 2004 and had received treatment and medication for that condition. Bobby Yang Decl. [Docket No. 27] ¶¶ 2–3; see also Wolf Decl. Exs. 5 and 6. Soua Yang also had an underlying condition of Lupus. See Wolf Decl. Ex. 2 ("Death Certificate"). Had the application reflected Soua Yang's Hepatitis B condition, she would have been denied life insurance. Wolf Decl. ¶ 6; Lumpkin Decl. [Docket No. 32] Ex. 1. On April 23, 2010, Soua Yang died of hypoxic encephalopathy and her underlying Lupus condition. See Death Certificate.

On December 3, 2010, Soua Yang's claim for benefits was denied because she had failed to disclose her Hepatitis B condition. Am. Compl. [Docket No. 21] ¶ 8. On August 31, 2011, this case was removed to federal court.

## III. DISCUSSION

### A. Plaintiffs' Motion to Strike Exhibit

Plaintiffs move to strike Exhibit 1 from Aaron Wolf's Declaration, a transcript of the November 10, 2009 phone call between a WSLAC representative and Soua Yang. Plaintiffs argue that this transcript is inadmissible because it violates the Policy and is hearsay. Defendant contends that the exhibit does not contradict the Policy and is not hearsay or is admissible hearsay.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement not offered for the truth of the matter asserted is not hearsay. United States v. Amahia, 825 F.2d 177, 181 (8th Cir. 1987). Hearsay is generally inadmissible. Fed.

R. Evid. 802. Hearsay is admissible, however, if it constitutes a business record "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [it]." Fed. R. Evid. 803(6).

Exhibit 1 is not hearsay because it is not being offered for the truth of the matter asserted. The phone transcript details that Soua Yang answered that she had not had any medication or treatment in the last five years, or had surgeries, treatments or medical tests in the last ten years. See Wolf Decl. Ex. 1. Defendant is not offering Exhibit 1 to prove that Soua Yang did not in fact receive medication, treatment, or medical tests in these time periods. Rather, Defendant offers it to prove that Soua Yang made these representations to the insurance company. As such, it is not hearsay and is admissible.

Even if it were hearsay, it is a business record and therefore admissible. WSLAC maintains and creates transcripts of its phone interviews as part of its ordinary course of business. Lynch Decl. [Docket No. 44] ¶ 3. Therefore, the transcript of Soua Yang's November 10, 2009 phone interview with a WSLAC representative constitutes a business record and is admissible under Federal Rule of Evidence 803(6).

Finally, Plaintiffs' argument that Exhibit 1 contravenes the Policy is unavailing. The Policy states, "No statement will be used in contesting this policy or any rider unless it is in an application or supplemental application and a copy of such application is attached to this policy." Policy at 16. Exhibit 1 is not being offered to contest the Policy, nor is it being offered to augment or supplement the Policy. Rather, Exhibit 1 is being offered to show that Soua Yang was asked the questions included in the Application. Because this purpose does not contest the Policy, Exhibit 1 is not expressly inadmissible under the Policy. Accordingly,

Plaintiffs' Motion to Strike Exhibit is denied.

**B. Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment, arguing that Soua Yang failed to make a required disclosure on her WSLAC insurance application regarding Hepatitis B or, in the alternative, that she signed the insurance application misstating that she had not been medically treated and did not have a disease. Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c)).[2] On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party, however, may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Minnesota law requires that, "In any claim upon a policy issued in this state without previous medical examination . . . the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless willfully false or intentionally misleading." Minn. Stat. § 61A.11. This allows an insurer to cancel an insurance policy issued without a medical examination if the insured willfully misstates or intentionally misleads the insurance company regarding necessary information. Berthiaume v. Minn. Mut. Life Ins. Co., 388 N.W.2d 15, 18 (Minn. Ct. App.

[2] The summary judgment standard was previously located in Rule 56(c).

1986). No intent to deceive is required where "there was an undoubted misrepresentation of a matter which materially affected the risk." St. Cloud Nat'l Bank & Trust Co. v. Woodmen of the World Life Ins. Soc'y, 451 N.W.2d 75, 79 (Minn. Ct. App. 1990); see also Ellis v. Great-West Life Assur. Co., 43 F.3d 382, 386 (8th Cir. 1994) ("Minnesota courts have not required a premeditated design to falsify facts.") (quotation omitted). Instead, the misrepresentation need only be "willfully false" or "intentionally misleading." St. Cloud Nat'l Bank & Trust Co., 451 N.W.2d at 79; Minn. Stat. § 61A.11. "All that is required is that the insured have full knowledge of the facts that are concealed and that the concealed facts would have precluded issuance of the policy if known to the insurance company." Ellis, 43 F.3d at 387. The cause of the insured's death need not be related to the undisclosed condition. See, e.g., Berthiaume, 388 N.W.2d at 16–19 (holding that an insurance company was proper in denying benefits for decedent's failure to disclose his high blood pressure even where decedent died by striking his head on a coffee table).

The only disputed issue under Minn. Stat. § 61A.11 in this case is whether Soua Yang made willfully false or intentionally misleading statements on her Application concerning her physical condition. It is undisputed that WSLAC never conducted a medical examination of Soua Yang, instead basing its insurance policy decision upon her answers in the Application. Wolf Decl. ¶ 4. It is also uncontested that WSLAC would not have issued the same Policy to Soua Yang had it known of her Hepatitis B condition. Wolf Decl. ¶ 6; Lumpkin Decl. Ex. 1. Plaintiffs instead argue that Soua Yang did not make willfully false or misleading statements on the Application. Although not asserted in Plaintiffs' Amended Complaint, Plaintiffs now contend that Soua Yang affirmatively disclosed this information to Kaojia Vang. Adam Yang

Decl. ¶ 7; Ka Her Decl. ¶ 7. Construing the evidence in the light most favorable to the nonmovant at the summary judgment stage, it is argued Soua Yang disclosed this information to Kaojia Vang and therefore did not orally make willfully false or misleading statements.

It is undisputed that Soua Yang affirmed her Application, which lacked this material information, at least on one occasion. "Where an agent records incorrect information on an application and the insured knows that the information is false, the insurer will not be bound by the acts of its agent and may avoid the policy." Patch v. Am. Summit Ins. Co., 1997 WL 20336, at *2 (Minn. Ct. App. Jan. 21, 1997). In Minnesota, a party who signs an agreement is presumed to know and agree to its terms. See TNT Props., Ltd. v. Tri-Star Developers LLC, 677 N.W.2d 94, 102 (Minn. Ct. App. 2004) ("Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent."). In fact, a party has a duty to "learn and know the contents of a contract before he signs and delivers it." Hoshaw v. Cosgriff, 247 F. 22, 26 (8th Cir. 1917). Illiteracy, in the absence of fraud, mistake, or unconscionability, is not a defense. Greer v. Kooiker, 253 N.W.2d 133, 140 (Minn. 1977); see also Shaughnessy v. New York Life Ins. Co., 203 N.W. 600, 601–02 (Minn. 1925). "It will not do for a man to enter into a contract, and . . . [then] to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." Upton v. Tribilcock, 91 U.S. 45, 50 (1875).

In Greer, the Minnesota Supreme Court determined that an individual's failure to read a contract, or to ask someone to explain or read its contents to her, did not void that person's signature and assent to the contract. 253 N.W.2d at 508. In Shaughnessy, the plaintiff argued

that the decedent signed a life insurance application but did not make the answers or read the application before she signed it. 203 N.W. at 601. The Shaughnessy court, however, determined that since the decedent had the "opportunity and ability to read it, [] in these circumstances, the law does not permit a party to avoid his contract by showing that he did not know what it contained." Id.

The Application which Kaojia Vang showed Soua Yang for her review reflected that Soua Yang had answered "no" to Questions 4 and 5. Adam Yang Decl. ¶ 11. Soua Yang signed the application, representing that all the answers were "true and complete to the best of my [] knowledge and belief." Application at 4; Adam Yang Decl. ¶ 11; Ka Her Decl. ¶ 11. It is disputed how much English Soua Yang could speak, read, or write, but for purposes of summary judgment she is adjudged to have spoken very little English and to be unable to read English. Adam Yang Decl. ¶ 3. Still, she had the opportunity to review the application and she had the ability, through access to Kaojia Vang, an insurance agent fluent in both Hmong and English, to review the life insurance agreement. No fraud, mistake, or unconscionable terms are alleged in this case.[3] By signing this Application, which included material misstatements that indisputably influenced WSLAC's approval of her Policy, Soua Yang adopted and verified willfully false and intentionally misleading statements regarding her physical condition. As a matter of law, Soua Yang's signing of the Application is a misrepresentation which allowed WSLAC to cancel its insurance policy under Minn. Stat. § 61A.11, and Defendant is entitled to summary judgment.

---

[3]Although Plaintiffs suggest that Kaojia Vang purposely failed to ask Soua Yang the material questions in the Application and that she did not give Soua Yang sufficient opportunity to review the application, no claim of fraud is mentioned in Plaintiff's Amended Complaint.

Moreover, the November 10, 2009 phone call between a WSLAC representative and Soua Yang, through the use of a Hmong interpreter, also demonstrates that Soua Yang made intentionally misleading or willfully false statements. In that phone call, Soua Yang answered that she had not had any medication or treatment in the last five years and that she had not had any treatments or medical tests in the last ten years. See Wolf Decl. Ex. 1 at 7–8. Additionally, she answered "no" to a question whether she had any problems with any part of her body. Id. at 9. These statements were willfully false or intentionally misleading and were provided prior to WSLAC issuing the Policy. Based on these misstatements, WSLAC issued the Policy. Under Minn. Stat. § 61A.11, Defendant is entitled to summary judgment based on these misrepresentations as well.

A contracting party's unfamiliarity with a contract written in a language foreign to them may seek to void that contract in certain circumstances. Defendant cites several cases to support this argument, but these cases stop short of flatly disallowing non-English-speaking individuals from ever voiding contracts written in English. The Court of Appeals for the Third Circuit held, "In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d. Cir. 2008). In Soto v. State Indus. Prods., Inc., 642 F.3d 67 (1st Cir. 2011), the Court of Appeals for the First Circuit cited Morales and held that unless intimidation or unconscionability is present, "The fact that [plaintiff] did not 'fully' understand that agreements that she signed because of her lack of fluency in English, of which she was aware, does not render void her consent to [the agreement]." 642 F.3d at 78. In Minnesota, illiteracy

may be grounds for avoiding a contract if fraud, mistake, or unconscionable terms are alleged. Greer, 253 N.W.2d at 140. None of these claims are alleged in this case, and this Court will not alter Minnesota law which protects a potentially exploitable population. Here, however, Soua Yang's lack of English language literacy does not release her from a duty of truthful disclosure on her WSLAC Application. In this case, Soua Yang had opportunities with two different Hmong speakers to correct the false statements in her application. Defendant's motion for summary judgment is accordingly granted.

## IV. ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Strike Exhibit [Docket No. 40] is **DENIED**; and
2. Defendant's Motion for Summary Judgment [Docket No. 23] is **GRANTED**;
3. Plaintiffs' Amended Complaint [Docket No. 21] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 30, 2012.